JERSEY CENTRAL POWER AND LIGHT COMPANY, PROSECUTOR-APPELLANT, v. STATE BOARD OF TAX APPEALS ET AL., DEFENDANTS-RESPONDENTS.

Argued February 2, 1944—Decided April 13, 1944.

For the appellant, *Autenrieth & Wortendyke* (*Joseph F. Autenrieth,* of counsel).

For the respondents Township of Millburn, City of Summit et al., *Herbert J. Hannoch* and *Morris Weinstein.*

The opinion of the court was delivered by

HEHER, J. The judgment is affirmed for the reasons expressed in the opinion of the Supreme Court.

The language of the statutory provision under review (*chapter 5, section 6 (a), of the Laws of* 1940: *N. J. S. A.* 54:31–50) does not reasonably admit of doubt as to its meaning. The insistence is that the terms "'lines' and 'mains' comprehend and include all facilities of the Company by means of which it distributes its product to the consumer." It is said that, in common usage and acceptance, "the meaning of the word 'lines' is more obvious than the meaning of the word 'mains,'" and includes "all facilities by which a commodity is transported to its destination," and that the "use of the word 'mains' was not intended to limit the meaning of the word 'lines.'"

But these are associated words that take into account the differing physical characteristics of the public utilities subjected to the gross receipt franchise tax; and, when considered in the light of the context and the legislative object, they must needs be given a common meaning. They are employed in the disjunctive, and plainly in contradistinction to "services" or "service connections." The word "main" is used in the sense of chief or primary conductor, to the exclusion of subsidiary transmission facilities. It signifies in popular usage a "principal line or conduit;" a "principal duct or pipe, as distinguished from lesser ones; esp., a conduit leading directly to or from a reservoir; as, a gas main; a fire main; and electric light or power main;" a "principal conductor in a system of electric distribution;" a "main or trunk line of a railroad." *Webster's New International Dictionary* (2d ed.). And the term "lines," more commonly applied to transportation facilities, of necessity takes its meaning from the associated word "mains," unless the latter be given a larger sense than its plain connotation—such as would not comport with the evident reason and spirit of the statutes.

The coupling of words denotes an intention that they shall be understood in the same general sense. The natural, ordinary and general meaning of terms and expressions may be limited, qualified and specialized by those in immediate association. Words which, standing alone, might seem of doubtful significance, may yet be made plain by comparison with other terms and provisions of the law. The context must be looked to for the true sense of a particular word or expression. *State* v. *Murzda*, 116 *N. J. L.* 219. Two or more words which ordinarily have a similar meaning, but are not equally comprehensive, will qualify each other when associated. They may import a conventional sense and have great scope when so used without restriction in the context, and they may be capable of widely different applications when specialized by accompanying provisions expressive of a particular intention or limited application. *Lewis' Sutherland Statutory Construction* (2d ed.), § 414.

And quite apart from the primary purpose to provide a standard for the admeasurement of excises on the gross receipts of the affected utilities, we are reinforced in our view of the legislative understanding of these terms by the deletion from the earlier statutory provision of the word "wires," effected by chapter 302 of the Laws of 1927 (*Pamph. L., p.* 567) shortly after the determination of the Supreme Court in the case of *Eastern Pennsylvania Power Co.* v. *State Board of Taxes and Assessments,* 103 *N. J. L.* 281. There, the term "wires" was given its literal import; and its immediate excision by statute affords ample demonstration of the legislative sense of the phrase "lines or mains." We see no contrary significance in the words "along, in or over any public street," in the statutory provision under consideration. The word "in" does not contemplate transverse service connections. This phrase, too, takes into consideration differences in the physical properties of the taxed utilities. In legislative contemplation, the terms "lines or mains" and "services" are mutually exclusive. The statute itself makes the distinction. *Chapter 5, section 10, of the Laws of 1940, supra;* likewise, the companion act, *chapter 4, section 7, of the Laws of 1940.* See, also, *Chalmers* v. *Suburban Telephone Co.,* 66 *N. J. L.* 41; *Atlantic City Gas and Water Co.* v. *Consumers' Gas and Fuel Co.,* 70 *N. J. Eq.* 536. And the State Public Utility Commission and the utilities themselves have recognized the difference in practice.

But the language is clear and unambiguous; and so there is no occasion for resort to extrinsic aids to construction.

The judgment is also assailed on the ground that it permits all municipalities who were not parties to the appellate proceedings to partake of the fruits of the reassessment. Approximately two hundred municipalities were entitled to share in the excise, but only eight filed petitions of appeal to the State Board of Tax Appeals, while seven others appeared as respondents before the Board. The Supreme Court made no ruling as to the status of the municipalities who were not parties to the appeal or the proceedings thereon. The specific point made is that non-participating municipalities (as distinguished from non-appealing municipalities)

should not derive any benefit from the action of the participating municipalities.

But this argument overlooks the nature of the subject-matter of the appeal. These excises are laid on gross receipts for the exercise of corporate franchises and the privilege of using public streets and highways, and are levied and collected by the state. All taxes are state taxes, even though levied for county or municipal purposes, and are apportioned as the state sees fit. And a municipality is merely a political subdivision or department of the state created for the exercise, within the prescribed limits, of the governmental functions and powers of the state. *Jersey City* v. *Martin,* 126 *N. J. L.* 353. Here, the appeal was taken to revise an assessment made in disregard of the law, not to correct an erroneous distribution of a collected tax.

It was manifestly not designed that, to render an erroneous levy correctible in its entirety, all the affected municipalities must join in the appeal, either as appellants or respondents. The statute confers the right of appeal on the interested municipalities (*R. S.* 54:1–41, 54:2–34); and, when one or more of the class appeal, the whole assessment is removed into the appellate tribunal for rectification in consonance with the statutory formula. It does not matter that the revision will redound to the advantage of other state agencies for local government who have taken no part in the proceedings. The appeal, in the legislative view, is a means of enforcing the statutory policy. It was not intended thus to penalize a municipality which had not invoked the appellate procedure and thereby to aid the utility in its non-observance of the full statutory duty.

Judgment affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, HEHER, PERSKIE, PORTER, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 12.

*For reversal*—None.