30 N.J. Super. 32 (1954)
103 A.2d 174
CITY OF PASSAIC, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
STATE OF NEW JERSEY, BY THE COMMISSIONER OF CONSERVATION AND ECONOMIC DEVELOPMENT, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 25, 1954.
*33 Mr. William N. Gurtman, attorney for plaintiff.
Mr. Grover C. Richman, Jr., attorney for defendant.
DAVIDSON, A.J.S.C.
This is a proceeding for declaratory relief under N.J.S. 2A:16-52 and is submitted to the court upon a stipulation of facts. The sole question presented for determination is the construction of the reversionary clause of a grant dated June 19, 1916, whereby the State of New *34 Jersey, by the Board of Commerce and Navigation, conveyed certain riparian lands in the City of Passaic to the board of commissioners of said municipality.
Plaintiff, in the early part of 1953, entered into negotiations to sell a portion of the lands, including improvements and appurtenances placed thereon by the city in establishing a ball field for public use, to the Housing Authority of the City of Passaic, a public body corporate and politic, created and existing under N.J.S.A. 55:14A-1 et seq., for the sum of $40,500.
The housing authority proposed to use said lands for the purpose of erecting a low-rent housing project so as to provide safe and sanitary dwelling accommodations for persons of low income, including the erection of apartment buildings, streets, parks and recreational facilities, and defendant, recognizing the existence of the current national housing shortage, and in order to permit the effectuation of the purpose of the Housing Authority, consented to the conveyance of the property by plaintiff to said housing authority in March 1953. Defendant's consent to the conveyance was upon condition that plaintiff would retain out of the proceeds of said sale the sum of $10,000, which was to be held in escrow and released and paid over to plaintiff or defendant after adjudication of an action for declaratory judgment.
The conveyance by the city to the housing authority embraces an area of approximately 96,106 square feet, of which 35,306 square feet are park area, 7,600 square feet playgrounds, 35,100 square feet streets and walks, 5,600 square feet clothes-drying areas and walks, and 12,500 square feet buildings.
The grant contains the following provisions:
"Provided, that the land now or formerly under water, above described and granted for park or street purposes, shall be kept and maintained as a public park, street, or place for public use, resort and recreation, and that no building or other structures shall be erected on such park, or on the lands now or formerly under water so granted inconsistent with its use as a public park, street or place of public use, resort or recreation.
*35 And provided further, that the lands so granted are to be used for the purposes above stated and to revert to the State of New Jersey if any diversion from such purpose is allowed by the said The Board of Commissioners of the City of Passaic, its successors or assigns."
Plaintiff city contends that the housing project of the Authority is a "public use" permitted under the provisions of the grant and, there having been no violation, the reversionary clause cannot be invoked. The State, as defendant, maintains that the housing project is not a "place for public use," that the erection of apartment buildings is inconsistent with the use of the land "as a public park, street or place of public use, resort or recreation," and that the lands revert to the State by reason of this diversion from the uses and purposes set forth in the grant.
The question presented is one of simple interpretation  what was the intent and meaning of the parties as evidenced by the language of the reversionary clause?
Plaintiff lays stress on the fact that a low-cost housing project has, in numerous cited cases, been held to be a public use under the statutes relating to eminent domain. This, while unquestionably true, lends no support to plaintiff's position, for many uses obviously inconsistent with park and street purposes have been so held, including sewage disposal plants, military installations, gravel pits and public warehouses.
The grant itself recites that pursuant to the act of April 17, 1914 authorizing the riparian commissioners to make grants to municipalities "for street and park purposes," "the Board of Commissioners of the City of Passaic having set aside and dedicated for the use of the inhabitants of the said city as a public park, said lands now or formerly under the tidewaters of the westerly branch or arm of the Passaic River, commonly known as the slank," and pursuant to the act of March 31, 1869 and further acts and joint resolutions of the Legislature, the State of New Jersey by its riparian commissioners, by an instrument dated October 29, 1914, did lease to the Board of Commissioners of the City of Passaic *36 the lands under water hereinbefore granted. Thus the lease and the subsequent grant to the City of Passaic were specifically made pursuant to the act of April 17, 1914 (L. 1914, c. 228) the title of which authorizes grants by the riparian commissioners to municipalities "for street and park purposes," and paragraph 1 of the act provides "that any land now or formerly under water so granted for park or street uses, shall be kept and maintained as a public park, street or place for public use, resort and recreation, and that no building or other structures shall be erected on such park or on the lands now or formerly under water so granted inconsistent with its use as a public park, street or place of public use, resort or recreation."
The words "place of public use" in the grant to the city must be construed in the light of the statutory expressions in order to determine the intent of the Legislature and the grantors.
Our Supreme Court in Ford Motor Co. v. N.J. Dept. of Labor and Industry, 5 N.J. 494 (1950), held that:
"The force of the term is on well-settled principles restrained by the accompanying words and the declared policy of the statute and the means employed for its execution. Ordinarily, the coupling of words denotes an intention that they shall be understood in the same general sense. The natural, ordinary and general meaning of terms and expressions may be limited, qualified and specialized by those in immediate association. Words of general and specific import take color from each other when associated together, and thus the word of general significance is modified by its associates of restricted sense. The general word is qualified by the particular word. Jersey Central Power and Light Company v. State Board of Tax Appeals, 131 N.J.L. 565 (E. & A. 1944). The principle is expressed in the doctrine of noscitur a sociis and the variant rule of ejusdem generis. A word is known from its associates."
Thus, the "place of public use" must be limited to such uses as are incident to or in the same general nature as parks and streets and places for public resort and recreation. An apartment building erected in furtherance of a low-rent housing project is obviously inconsistent with the use of the land for such purposes.
*37 Nor indeed, even in the general sense and entirely apart from the context of the grant, is it a "place for public use," for the essential feature of "public use" is that it is not confined to privileged individuals, but open to indefinite public, Overlook Development Co. v. Public Service Commission, 306 Pa. 43, 158 A. 869, 872 (Sup. Ct. 1932); it must be for the general public and not a use by or for particular individuals, McQuillen v. Hatton, 42 Ohio St. 202 (Sup. Ct. 1884); the use and benefit must be in common, not to particular individuals. Coster v. Tide Water Co., 18 N.J. Eq. 54, 68 (Ch. 1866); People ex rel. v. Ricketts, 248 Ill. 428, 94 N.E. 71 (Sup. Ct. 1911).
My conclusion is that the Board of Commissioners of the City of Passaic has allowed a diversion from the purpose of the grant and in accordance with 8(c) of the stipulation of facts, the $10,000 retained in escrow should be released and paid over to the State.