803 A.2d 700 (2002)
353 N.J. Super. 590
STATE of New Jersey, Plaintiff-Appellant,
v.
Kevin SISLER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 2002.
Decided August 8, 2002.
*701 Joseph Connor, Jr., Assistant Prosecutor, argued the cause of appellant (Michael M. Rubbinaccio, Morris County Prosecutor, attorney; Mr. Connor, of counsel and on the brief).
Michael S. Bubb, Morristown, argued the cause for respondent (Bubb & Hoen, attorneys; Mr. Bubb, of counsel and on the brief).
Before Judges COLLESTER, LINTNER and PARKER.
The opinion of the court was delivered by *702 COLLESTER, J.A.D.
Pursuant to leave granted, the State appeals from an order of the Law Division dismissing the first count of an indictment against defendant Kevin Sisler, charging him with the second degree offense of endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4b(4),[1] commonly known as the child pornography law. We affirm.
The record below consists of the following testimony before the Morris County Grand Jury. FBI Agent William J. DeSa, Jr. received information in November 1999, that a man was using one of the public computers at the Morris County Library in Hanover Township to view and print child pornography. DeSa went to the library on December 15, 1999, and saw a man subsequently identified as defendant sitting in front of one of the library computers and using the Internet to view images of children engaged in what DeSa described as prohibited sexual acts. He saw the man access web sites named Boy Lovers, Man/Boy Lovers, and Child Starlets and use the library printer to copy images of male children which focused on their genitalia. DeSa did not testify as to the number of copies of each image that were printed. He did say the copied pages were piled about an inch and a half thick.
When the defendant left the Morris County Library, Agent DeSa followed to obtain the license plate number on defendant's car in order to identify the man. The result was that later on the same day the police obtained a search warrant for defendant's car and residence. They found in his room a large number of photographs of naked children printed from computer images. The State later produced thirty images before the grand jury as a "sample" of what was found.[2]
The following day, December 16, 1999, the defendant admitted to Detective Angelo Rosato of the Morris County Prosecutor's Office that he often viewed child pornography web sites at the county library because it was near where he worked. He admitted having photographs and images of nude young men at his home and explained that he often masturbated while viewing the pictures. There was no proof adduced before the grand jury that defendant possessed the material for any purpose other than his own use.
On June 7, 2000, the Morris County Grand Jury returned a two count indictment. The first count alleged that on December 15, 1999, the defendant "knowingly did use the computer to reproduce the image of a child in a prohibited sexual act," contrary to N.J.S.A. 2C:24-4b(4), a second degree offense, which reads as follows:
Any person who photographs or films a child in a prohibited sexual act or in the simulation of such an act or who uses any device, including a computer, to reproduce or reconstruct the image of a child in a prohibited sexual act or in the simulation of such an act is guilty of a crime of the second degree.
The second count charged the same conduct as a violation of N.J.S.A. 2C:244b(5)(b), *703 a fourth degree crime described as follows:
Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a chid engaging in a prohibited sexual act or in the simulation of such an act, including on the Internet, is guilty of a crime of the fourth degree.
Defendant moved for dismissal of the first count of the indictment on grounds that the grand jury testimony did not describe conduct violative of the second degree offense. Judge B. Theodore Bozonelis granted the motion, holding that printing a copy of a computer image of alleged child pornography did not fall within the second degree crime of N.J.S.A. 2C:24-4b(4) requiring the reproduction or reconstruction of an image of a child constituting child pornography.
On appeal the State argues that printing a computer image of child pornography constitutes reproduction of the image within the meaning of N.J.S.A. 2C:24-4b(4). On the other hand, defendant seeks affirmance based on Judge Bozonelis' reasoning that the statute relates to reproducing the image of a child in a prohibited sexual act on the computer for purposes of dissemination as opposed to the act of making a copy of the image for personal gratification.
Statutory interpretation begins with the examination of statutory language to discern legislative intent. See James v. Bd. of Trustees of Public Employees' Retirement System, 164 N.J. 396, 404-05, 753 A.2d 1061 (2000); State, Dep't of Law & Pub. Safety v. Gonzalez, 142 N.J. 618, 627, 667 A.2d 684 (1995). Since the term "reproduce" as used in N.J.S.A. 2C:24-4b(4) was not defined, the State argues that we must look to the common ordinary meaning of the word and points to the dictionary meaning "to make a copy of." Webster's New World Dictionary (1996). However, the State's position oversimplifies the issue. While making a copy of an image of child pornography from an Internet web site arguably constitutes reproducing the image, it can also be asserted that in this context "reproduce" connotes the use of a computer to disseminate such an image as opposed to generating a copy for purposes of viewing or possessing the image in violation of N.J.S.A. 2C:24-4b(5)(b).
When a statute is subject to two conflicting interpretations, courts will look to legislative history as a guide to the underlying legislative intent. See State in the Interest of M.T.S., 129 N.J. 422, 431, 609 A.2d 1266 (1992). We begin the analysis with the 1978 version of N.J.S.A. 2C:24-4. Subsection b(3) addressed persons who initiated or orchestrated the use of a child for pornographic purposes, specifying that "[a]ny person ... who causes or permits a child to engage in a prohibited sexual act or in the simulation of such an act if such person knows, has reason to know, or intends that the crime may be photographed or filmed, is guilty of a crime of the second degree." N.J.S.A. 2C:24-4b(3). The statute next addressed the person who manufactured or produced the material, stating that it was crime of the second degree for any person to photograph or film a child in a prohibited sexual act or the simulation of such an act. N.J.S.A. 2C:24-4b(4). Subsection b(5) then addressed the seller of child pornography, providing that any person who knowingly received for sale or sold such material was guilty of a second degree crime.
In sum, the child pornography statute prior to 1983 generally prohibited the permitting *704 of a child to engage in the production of pornographic material; the photographing or filming of a child engaged in sexually prohibited acts or simulation thereof and the selling of pornographic material depicting children engaged in sexual acts or simulation.
In 1983 the Legislature amended the second degree criminal statute to extend its scope beyond the sale of child pornography to procuring, manufacturing, disseminating, offering to disseminate such material as well as exhibiting and advertising it. The amendment also expanded upon the materials employed from photographs and film to include videotape as well as "any other reproduction or reconstruction" depicting a child engaged in a prohibited act with the stated intent of incorporating changing technology including the use of a video camera as a means of production of child pornography.
Neither the 1978 statute nor the 1983 amendments made it a crime to view or possess child pornography. It was not until 1992 that the Legislature amended the child pornography statute to add a new fourth degree crime prohibiting the knowing possession and viewing of already created child pornography. N.J.S.A. 2C:24-4b(5)(b).
Two years later in 1994 the Legislature enacted N.J.S.A. 2C:7-1 to-11, commonly known as "Megan's Law," which established a system of registration and community notification for "sex offenders and offenders who commit other predatory acts against children." N.J.S.A. 2C:7-1. In this context, Megan's Law is noteworthy since N.J.S.A. 2C:7-2b(2) defines a "sex offense" to include the proscribed activity of N.J.S.A. 2C:24-4b(3), permitting a child to engage in a prohibited sexual act or simulation, and N.J.S.A. 2C:24-4b(4), the manufacturing, producing or photographing of such prohibited sexual activity. However, Megan's Law does not encompass the viewing or possession of such material as is proscribed by N.J.S.A. 2C:24-4b(5)(b).
Further amendment to the child pornography statute was made in 1998 to clarify applicability of the Act to the state-of-the-art production and distribution of child pornography through use of a computer and the Internet. N.J.S.A. 2C:24-4b(3) [now (4)].See State v. Brady, 332 N.J.Super. 445, 451, 753 A.2d 1175 (App.Div.), certif. denied, 165 N.J. 606, 762 A.2d 220 (2000). A new statutory definition was added to provide that "`reproduction' means, but is not limited to, computer generated images." N.J.S.A. 2C:24-4b(1).
Our review of the legislative history coincides with the decision by Judge Bozonelis that the child pornography statute did not encompass the printing of an existing image as a second degree crime. The State's position would have the second degree offense include the act of making a single photocopy of a picture of child pornography whether in a book or magazine as well as printing one copy of a computer image. We disagree with this interpretation. Absent proof of dissemination or intent to disseminate, defendant does not fit within the statutory categories of a seller, distributor or manufacturer in N.J.S.A. 2C:24-4b(5)(a). We hold that the simple act of printing a copy of an image of child pornography does not constitute the reproduction or reconstruction of the image within the meaning of N.J.S.A. 2C:24-4b(4), although such conduct clearly is violative of the prohibition against knowingly possessing or knowingly viewing such material under N.J.S.A. 2C:24-4b(5)(b).
Our conclusion is buttressed by the statutory application of Megan's Law to N.J.S.A. 2C:24-4. The legislative history *705 of the child pornography statute and Megan's Law clearly indicate that the Legislature intended for Megan's Law to apply to those persons who manufacture or produce child pornography under N.J.S.A. 2C:24-4b(4).[3]
Megan's Law, however, does not apply to the fourth degree offense denoted in N.J.S.A. 2C:24-4b(5)(b), viewing or possessing child pornography, and the distinction is significant since it indicates a legislative classification of an offense under the child pornography statute.
While a viewer who prints out a copy of a computer image of child pornography for his own possession and prurient purposes is clearly in violation of the fourth degree crime delineated in N.J.S.A. 2C:24-4b(5)(b), we do not believe that the Legislature intended that the simple act of clicking a mouse button to print a computer image transforms the viewer/possessor into a producer of child pornography subject to second degree penalties as well as sex offender status under Megan's Law. We perceive that the Legislature intended to distinguish between a producer or manufacturer of child pornography and a person guilty of possessing such material which is received from any source be it from a seller/distributor or from a computer image on the Internet. Both possessor and producer are guilty under the child pornography statute of our State. One cannot exist without the other. However, the Legislature has reserved the more severe penalty for those who produce or distribute such dangerous filth.
When all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms, or the socalled formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation.
[LaFage v. Jani, 166 N.J. 412, 431, 766 A.2d 1066 (2001) (quoting Jersey City Chap. Prop. Owners' Protective Ass'n v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969)).]
We therefore affirm the dismissal of count one of the indictment against the defendant. In light of our determination we see no reason to address defendant's constitutional argument under Ashcroft v. The Free Speech Coalition, ___U.S. ___, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). See In re Petition of New Jersey American Water Co. for an Increase in Rates for Water and Sewer and Other Tariff Modifications, 169 N.J. 181, 197, 777 A.2d 46 (2001); Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971);Binkowski v. State, 322 N.J.Super. 359, 375, 731 A.2d 64 (App.Div.1999).
Affirmed.
NOTES
[1] At the time of the determination on the defendant's motion the statutory section was numbered as N.J.S.A. 2C:24-4b(3). Subsequently the section was renumbered as N.J.S.A. 2C:24-4b(4). L.2001 c. 291.
[2] The images submitted to the grand jury were not produced at the hearing on defendant's motion to dismiss and accordingly are not part of the record. We therefore do not pass upon whether or not the pictures in fact "constituted the image of a child in a prohibited sexual act." N.J.S.A. 2C:24-4b(4).
[3] In fact, by a recent amendment in December 2001, the Legislature made a technical change to correct an unintended result of the 1998 amendment which renumbered certain paragraphs without realizing that as a result Megan's Law would have been inapplicable to a person who produced child pornography. By restoring the original numbering the Legislature clarified that Megan's Law indeed applied to the manufacturing or producing of child pornography. L.2001 c. 291.