827 A.2d 274

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
KEVIN SISLER, DEFENDANT–RESPONDENT.

Argued April 29, 2003—Decided July 24, 2003.

*Charles Ouslander,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Acting Attorney General of New Jersey, attorney).

*Michael S. Bubb,* argued the cause for respondent (*Mr. Bubb,* attorney; *Maria L. Zarella,* on the brief).

The opinion of the Court was delivered by

VERNIERO, J.

This case requires us to interpret the child-pornography provisions of New Jersey's child-endangerment statute. Defendant allegedly printed a prohibited image from a computer for his sole personal use. The State charged defendant as a second-degree offender under *N.J.S.A.* 2C:24–4b(4), exposing him to a presumptive seven-year prison term. The narrow legal issue is whether the statute permits that charge as a matter of law. We hold that it does not.

## I.

We briefly summarize the pertinent facts. Acting on information that an unidentified male was using a public computer at a local library to view and print images of child pornography, an FBI agent went to the library to investigate. The agent observed the individual, later identified as defendant, access certain Internet web sites and use the library's printer to copy the prohibited images. The images focused on the children's genitalia. Although the record does not clearly indicate how many different images defendant allegedly had printed, the agent indicated that "the copied pages were piled about an inch and a half thick." *State v. Sisler*, 353 *N.J.Super.* 590, 594, 803 *A.*2d 700 (App.Div. 2002).

The agent contacted the county prosecutor's office regarding the incident, and a joint investigation was initiated. The law enforcement authorities thereafter obtained a search warrant for defendant's car and residence. After executing the warrant, the authorities discovered "a large number of photographs of naked children printed from computer images." *Ibid.* A detective from the county prosecutor's office stated that defendant admitted that he possessed images of "nude young boys" at his home and that he often masturbated while viewing the pictures. For purposes of this appeal, defendant acknowledges that at least one of the images satisfies the statutory definition of child pornography.

The grand jury indicted defendant on two counts of child endangerment. The first count alleges that defendant "knowingly did use a computer to reproduce the image of a child in a prohibited sexual act" in violation of *N.J.S.A.* 2C:24–4b(4), a second-degree offense that exposes him to a presumptive seven-year prison term. *N.J.S.A.* 2C:44–1f(c). The indictment's second count charges defendant with possession of child pornography in violation of *N.J.S.A.* 2C:24–4b(5)(b), a fourth-degree offense that exposes him to a presumptive nine-month prison term. *N.J.S.A.* 2C:44–1f(e).

Before trial, defendant moved to dismiss the reproduction count. The trial court granted that motion, and the Appellate Division affirmed in a reported opinion. *Sisler, supra,* 353 *N.J.Super.* 590, 803 *A.*2d 700. The Appellate Division concluded that, as a matter of law, a person who prints a computer image for his or her personal use has not "reproduced" it within the meaning of the statute. More specifically, the panel determined that the Legislature did not intend "that the simple act of clicking a mouse button to print a computer image" would transform a lone viewer "into a producer of child pornography subject to second degree penalties[.]" *Id.* at 598–99, 803 *A.*2d 700. We granted the State's motion for leave to appeal, 175 *N.J.* 72, 812 *A.*2d 1106 (2002), and now affirm.

## II.

The statutory provisions implicated in this case derive from a 1977 "Act prohibiting the sexual exploitation of children in photographs and films[.]" *L.* 1977, *c.* 329. That enactment predated the Code of Criminal Justice (Code). Under the prior Act, "[a]ny person who photograph[ed] or film[ed] a child in a prohibited sexual act or in the simulation of such an act [was] guilty of a high misdemeanor." *Ibid.* The Act also made it a crime for any person to cause a child to engage in a prohibited sexual act or to sell such images of children, but it did not criminalize the mere possession of the prohibited photographs or films. *Ibid.*

The Code was adopted in 1978. With it, the Legislature included portions of the prior Act in the child-endangerment statute, *L.* 1978, *c.* 95 (codified at *N.J.S.A.* 2C:24–4). The Code graded the relevant offenses as crimes of the second degree. *Ibid.*

As technologies changed, lawmakers sought more generic ways of describing the method by which child pornography was made. In 1983, the Legislature enacted language to ensure that the statute brought the "reproduction or reconstruction" of a prohibited image within its reach. To the list of second-degree offenders who photograph or film a child in a prohibited sexual act, the

Legislature thus added the person "who uses any device to reproduce or reconstruct the image of a child" in such an act. *L.* 1983, *c.* 494. In the same set of amendments, the Legislature also criminalized as a second-degree offense the sale or distribution of any depiction of a prohibited image that is captured on "video tape or any other reproduction or reconstruction[.]" *Ibid.*

The 1983 revisions appear to be in response to advances made in video imaging. They make clear that it is not just by a photograph or traditional film that a second-degree offender can deal in prohibited pornography. In that respect, a Senate committee statement that accompanied the amendments explains that lawmakers intended to "include video tapes and other types of reproductions and reconstruction within the purview of the child pornography statute." Senate Judiciary Committee, *Statement to Senate, No. 1843* (Dec. 8, 1993).

The Legislature also revised the statute in 1992 by adding simple possession of child pornography as a fourth-degree offense. *L.* 1992, *c.* 2. Then, in 1998, the Legislature again amended the statute to criminalize child pornography on the Internet. The Legislature accomplished that aim by revising the law in three respects. First, lawmakers added a definition of "[r]eproduction" that includes "computer generated images." *L.* 1998, *c.* 126 (currently codified under *N.J.S.A.* 2C:24-4b(1)). Second, they revised the portion of the statute that, in its original 1977 form, had criminalized the photographing or filming of a child in a prohibited sexual act. Those revisions now make clear that the person who creates a prohibited image via a photograph, film, or computer generation is guilty of a second-degree offense. The provision's current text, which is the focus of this appeal, provides:

Any person who photographs or films a child in a prohibited sexual act or in the simulation of such an act or who uses any device, including a computer, to reproduce or reconstruct the image of a child in a prohibited sexual act or in the simulation of such an act is guilty of a crime of the second degree.

[*N.J.S.A.* 2C:24-4b(4).]

Finally, the Legislature revised the provision regarding possession by adding explicit language in respect of the Internet. As amended, that provision states:

Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program *or file,* video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, *including on the Internet,* is guilty of a crime of the fourth degree.

[*N.J.S.A.* 2C:24–4b(5)(b) (emphasis added).]

The above history demonstrates how the Legislature meticulously denominated certain offenders and crimes in accordance with their perceived degrees of severity. Persons who cause or permit a child to engage in a prohibited sexual act (knowing or intending that pornography may be produced as a result) are second-degree offenders. The exception is when such persons are parents or guardians of the child, in which case they are treated as first-degree offenders. *N.J.S.A.* 2C:24–4b(3). Also considered second-degree offenders are individuals who photograph or film a child in a prohibited sexual act, *N.J.S.A.* 2C:24–4b(4), or who generate such an image via a computer, *ibid.,* and persons who sell, manufacture, distribute, circulate, disseminate, or present such images to other persons. *N.J.S.A.* 2C:24–4b(5)(a).

In contrast, the person who "knowingly possesses or knowingly views" the prohibited image is guilty of a fourth-degree offense. *N.J.S.A.* 2C:24–4b(5)(b). The Code's grading pattern in respect of child pornography is similar to its provisions regarding drug offenses under which distribution offenses are treated more severely than possession offenses. *Compare N.J.S.A.* 2C:35–5b(4) (grading manufacture or distribution of one ounce or more of Schedule I or II drug as second-degree offense) *with N.J.S.A.* 2C:35–10a(2) (grading simple possession of Schedule V drug as fourth-degree offense).

### III.

This dispute requires us to construe the term "reproduce" contained in *N.J.S.A.* 2C:2–4b(4). The State argues that the plain,

dictionary definition of that term includes within its purview defendant's alleged conduct. In other words, "reproduction" includes the act of printing a computer image for one's personal use. In response, defendant essentially argues that the Legislature did not intend his alleged conduct to fall within the category of a second-degree offense. He thus contends that the trial court properly dismissed the indictment's reproduction count.

A.

Since the Legislature first enacted it in 1977, the provision at issue here has had as its focus the creation of child pornography. As noted, it originally contemplated that a culpable party would produce such material in one of two ways, *i.e.*, by photograph or by film. The statute today contemplates that the party might generate the prohibited image via other methods or devices such as video imaging, or via a computer device that would aid the person in "reproducing" or "reconstructing" the image for use on the Internet.

From that perspective, we agree with defendant. The disputed language, fairly read, merely describes the computer-generation or other technological process that creates the prohibited image that the original creator or that another person, in turn, disseminates, possesses, or simply views. Stated differently, we consider the word "reproduce" alongside the second-degree offenses to which it is held equivalent, including "photograph[ing] or film[ing] a child in a prohibited sexual act[.]" The Legislature coupled the offenses of photographing and reproducing, indicating that they are of comparable gravity and worthy of identical punishment. The term "reproduce" thereby takes on a comparable meaning.

> The coupling of words denotes an intention that they shall be understood in the same general sense. The natural, ordinary and general meaning of terms and expressions may be limited, qualified and specialized by those in immediate association. Words which, standing alone, might seem of doubtful significance, may yet be made plain by comparison with other terms and provisions of the law.

[*Jersey Cent. Power & Light Co. v. State Bd. of Tax Appeals,* 131 *N.J.L.* 565, 567, 37 *A.2d* 111 (*E. & A.*1944).]

█ A creator of child pornography (*e.g.,* a person who initially photographs or films the child) is more culpable than a possessor because the creator sets in motion the highly objectionable industry that this statute seeks to combat. Reading the subsection's text as a whole, we conclude that the Legislature similarly intended the companion term "reproduce" to require more than the printing of a preexisting image for personal use. We are not persuaded by the State's resort to a dictionary definition of the term that gives it a meaning uninformed by context.

> It is always an unsafe way of construing a statute ... to divide it by a process of etymological dissection, and to separate words and then apply to each, thus separated from its context, some particular definition given by lexicographers and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascribed from the context, the nature of the subject matter treated of, and the purpose or intention of ... the body which enacted or framed the statute or constitution.
>
> [2A Norman J. Singer, *Sutherland Statutory Construction* § 46:05 at 167–68 (6th ed.2000) (footnote omitted).]

█ Defendant, who allegedly printed an already-created image for his sole use, does not fit within a category of second-degree offender. There is no allegation that defendant knowingly received the image for the purpose of selling it. Nor does the State allege that defendant sold, displayed, or distributed the prohibited image to other persons. Thus, he is no more than a suspected fourth-degree possessor. That the State has presented a reasonable contrary construction of the statute does not alter our conclusion. Indeed, when a criminal statute is susceptible to two plausible interpretations we are bound by our canons of construction to construe it in the light most favorable to the accused. *State v. Livingston,* 172 *N.J.* 209, 218, 797 *A.2d* 153 (2002).

### B.

One of the Code's hallmarks is its grading of offenses. When Governor Byrne signed the Code into law in 1978, his office

highlighted that fact, explaining that the "Code classifies crimes as first, second, third and fourth degree based on degrees of severity." Press Release, Office of Governor Brendan Byrne (Aug. 10, 1978). Although the person who possesses child pornography helps to foster a pernicious industry, his or her offense is less severe than the person who creates an image that then can be sold, distributed, circulated, or simply viewed. Because the State's construction effectively treats all such individuals alike, it runs counter to the Code's basic philosophy of distinguishing among offenders by the severity of their offense.

Put differently, that the Legislature would want to punish as second-degree offenders those who create, distribute, or sell the pornography, namely, the persons who make possible its proliferation and use, is true to the statute's purpose. That lawmakers would consider less culpable the simple possessor, namely, the person who views or prints a computer image for his or her sole use, appears equally rational. Because defendant's analysis is more faithful to the statute's history and to the Code's sentencing structure, it should govern this appeal.

IV.

In sum, the question before us is whether defendant's alleged conduct falls within *N.J.S.A.* 2C:24–4b(4) as a matter of law. We are convinced by the statute's evolution, its overall structure, and its current text, that the answer to that question is no. The prohibited image already was created when defendant allegedly printed it for his sole use. Thus, he should be exposed to a nine-month prison term as a suspected fourth-degree offender, not to a seven-year prison term as a suspected second-degree offender. The statute is susceptible to two reasonable interpretations. Absent an explicit clarification by the Legislature, we must construe the statute in the light most favorable to a defendant. In so doing, we affirm the judgment of the Appellate Division.

LaVECCHIA, J., dissenting.

This case presents the question whether a defendant can be charged with second-degree reproduction of child pornography in violation of *N.J.S.A.* 2C:24–4b(4) for printing Internet-based child pornography images at a library computer station. The Court's role here is not to divine in the abstract the proper degree of punishment for the conduct with which defendant is charged. Our function is to interpret the language contained in the criminal statute proscribing activities associated with production, handling, and use of child pornographic materials. Upon review of that language, I would conclude that the Legislature intended that printing hard copies of Internet-based child pornography images, if proven, would support a conviction for "reproducing" images within the meaning of *N.J.S.A.* 2C:24–4b(4). Accordingly, I respectfully dissent from the view of my colleagues in the majority.

## I.

As with all issues of statutory interpretation, the "overriding goal must be to determine the Legislature's intent." *State, Dep't of Law & Pub. Safety v. Gonzalez,* 142 *N.J.* 618, 627, 667 *A.*2d 684 (1995). The interpretative process begins with an examination of a statute's plain language, which is the "clearest indication of that intent." *Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety,* 120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990). "If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). In that event, the statute must be implemented as written, "without resort to judicial interpretation, rules of construction, or extrinsic matters." *Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 202, 723 *A.*2d 944 (1999).

In addition to those general principles, when it comes to interpreting a penal statute, other considerations apply. A court must not extend the language of a penal act by interpretation because due process requires that citizens be placed on notice of pro-

scribed conduct. *State v. Valentin,* 105 *N.J.* 14, 17–18, 519 *A.*2d 322 (1987). Consistent with that prohibition, terms in a criminal statute must be accorded "their natural and reasonable meaning." Charles E. Torcia, 1 *Wharton's Criminal Law* § 12 (15th ed.1993); *see also* Norman J. Singer, 3 *Sutherland Statutory Construction* § 59.06 (5th ed.1992) (stating that "the language of ... a penal statute should be given a reasonable or common sense construction, consonant with the objects of the legislation"). If a penal statute is subject to more than one reasonable interpretation, it must be strictly construed, lest it "be extended by tenuous interpretation beyond the fair meaning of its terms [and] applied to persons or conduct beyond the contemplation of the Legislature." *State v. Provenzano,* 34 *N.J.* 318, 322, 169 *A.*2d 135 (1961). Conversely, where statutory language "is plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms." *State, Dep't of Law & Pub. Safety v. Bigham,* 119 *N.J.* 646, 651, 575 *A.*2d 868 (1990).

## II.

In relevant part, *N.J.S.A.* 2C:24–4b provides:

(3) A person commits a crime of the second degree if he causes or permits a child to engage in a prohibited sexual act or in the simulation of such an act if the person knows, has reason to know or intends that the prohibited act may be photographed, filmed, reproduced, or reconstructed in any manner, including on the Internet, or may be part of an exhibition or performance. If the person is a parent, guardian or other person legally charged with the care or custody of the child, the person shall be guilty of a crime of the first degree.

(4) Any person who photographs or films a child in a prohibited sexual act or in the simulation of such an act or who *uses any device, including a computer, to reproduce or reconstruct the image of a child in a prohibited sexual act or in the simulation of such an act is guilty of a crime of the second degree.*

(5)(a) Any person who knowingly receives for the purpose of selling or who knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers or agrees to offer, through any means, including the Internet, any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the second degree.

(b) *Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, including on the Internet, is guilty of a crime of the fourth degree.*

[*N.J.S.A.* 2C:24–4b (emphasis added).]

The statute thus creates four classifications of offenders: (1) those who initiate or orchestrate child pornography; (2) those who manufacture or otherwise produce child pornography; (3) those who sell or otherwise distribute child pornography, or receive such material with an intent to sell it; and (4) those who possess or view child pornography. The most egregious violation, a first-degree offense, is reserved for a parent or one legally charged with caring for a child who permits or encourages that child to engage in a prohibited sexual act knowing or intending that it will be captured to create child pornographic materials. *N.J.S.A.* 2C:24–4b(3). The majority of child pornography offenses, however, including creating or reproducing such images, are punishable as second-degree offenses. Second-degree offenders include those who (1) have no legal relationship with a child but play a role in having the child participate in proscribed sexual conduct for purposes of the creation of child pornography; (2) create images of child pornography; (3) reproduce or reconstruct images of child pornography; (4) receive child pornography with the intent to distribute it; or (5) disseminate child pornography. Fourth-degree offenders include those who possess or view child pornography.

This case concerns the subset of second-degree offenders who "reproduce" child pornography, as that action is criminalized in *N.J.S.A.* 2C:24–4b(4). That provision punishes "[a]ny person ... who uses any device, including a computer, to *reproduce* or reconstruct the image of a child in a prohibited sexual act or in the simulation of such an act." *N.J.S.A.* 2C:24–4b(4) (emphasis added). The verb "reproduce" as used in that provision is not complex, technical, or difficult to understand. The commonly understood meaning of the term is "to make an image, copy, or

other representation of." [1]  *Webster's Third New Int'l Dictionary* (1981); *see also The American Heritage Dictionary of the English Language* (4th ed.2000) (defining reproduce as "[t]o undergo copying"); *Webster's Revised Unabridged Dictionary* (1996) (defining reproduce as "[t]o cause to exist again" or "[t]o make an image or other representation of; ... to make a copy of").

A plain and unambiguous term such as "reproduce" should be accorded its fair meaning, as it would be understood by ordinary citizens. See *Bigham, supra,* 119 *N.J.* at 650–51, 575 *A.*2d 868; *Bergen Commercial Bank, supra,* 157 *N.J.* at 202, 723 *A.*2d 944. Accordingly, I construe *N.J.S.A.* 2C:24–4b(4) to mean that "[a]ny person who ... uses any device, including a computer, to [make a copy of] or reconstruct the image of a child in a prohibited sexual act or in the simulation of such an act is guilty of a crime of the second degree." Inasmuch as defendant allegedly used a "device" as identified in the statute—specifically, a computer printer—to reproduce or "make a copy or image of" Internet-based child pornography, he is within the reach of *N.J.S.A.* 2C:24–4b(4). *Accord State v. Roberts,* 796 *So.*2d 779, 784 (La.Ct.App.2001), *writ denied,* 825 *So.*2d 1163 (La.2002) (interpreting "reproduction" in Louisiana child pornography statute according to its ordinary meaning).

The Appellate Division reasoned that "reproduce" can be interpreted as commonly understood, or as "connot[ing] the use of a computer *to disseminate* ... an image as opposed to generating a copy for purposes of viewing or possessing the image in violation of *N.J.S.A.* 2C:24–4b(5)(b)." *Sisler, supra,* 353 *N.J.Super.* at 595–96, 803 *A.*2d 700 (emphasis added). Perceiving an ambiguity, the panel resolved the conflicting interpretations in favor of lenity and

---

[1] Elsewhere in the statute, " '[r]eproduction' means, but is not limited to, computer generated images." *N.J.S.A.* 2C:24–4b(1). "Reproduce" is not so defined in *N.J.S.A.* 2C:24–4b(4). Thus, the latter provision reasonably encompasses various means of creating additional copies of the item. Here, however, we are only confronted with a computer created copy of a picture viewed from a computer monitor.

concluded that the Legislature did not intend to punish the printing of images of child pornography for purposes of viewing solely for one's own sexual gratification more severely than simply viewing such material. *Id.* at 599, 803 *A.*2d 700. A majority of this Court concludes similarly, interpreting *N.J.S.A.* 2C:24–4b(4) as concerning the creation of child pornography that is later possessed or distributed. *Ante* at 205, 827 *A.*2d at 278.

In my view, one's intent to disseminate child pornography, even without pecuniary motive, becomes relevant only under *N.J.S.A.* 2C:24–4b(5)(a), which includes a prohibition on the knowing mailing, delivering, transferring, publishing, distributing, circulating, disseminating, presenting, exhibiting, or offering "through any means, including the Internet," an image, including "a computer program or file," or "any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act." That section is not pertinent here because defendant is not charged with sending computerized child pornography. It is sufficient under *N.J.S.A.* 2C:24–4b(4) that by printing computerized images of child pornography, he made new copies of the images that appeared on the computer monitor. Had defendant made a duplicate of a videotape of child pornography for his own viewing, he equally would have violated *N.J.S.A.* 2C:24–4b(4). I assume that the Legislature incorporated a distribution element precisely where it meant such an element to apply. See *GE Solid State, Inc. v. Dir., Div. of Taxation,* 132 *N.J.* 298, 308, 625 *A.*2d 468 (1993) (stating that "where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded"). There is no indication from the face of this statutory scheme that the Legislature intended to punish only those individuals who reproduced copies of child pornography for the purpose of disseminating them to others. To read such a requirement into the elements of *N.J.S.A.* 2C:24–4b(4) creates a redundancy that is abhorrent to principles of statutory construction. Courts should avoid a " 'construction that will render any part of a statute inoperative, superfluous, or meaningless.' " *Stra-*

*senburgh v. Straubmuller,* 146 *N.J.* 527, 539, 683 *A.*2d 818 (1996) (quoting *State v. Reynolds,* 124 *N.J.* 559, 564, 592 *A.*2d 194 (1991)).

The majority echoes the Appellate Division's concern that the mere click of a computer mouse on a printer icon is sufficient to subject anyone to criminal charges in the second degree. That concern should not override a clearly expressed legislative judgment to the contrary. The ease with which child pornography can be reproduced, given modern technology, does not support lessening the criminal penalty that may attach for such conduct where the conduct is captured by the ordinary meaning of the language in the statute. The Legislature has chosen language that reaches broadly to punish the perpetuation of child pornography. It is not our function to sit in review of the Legislature's judgment in respect of punishment gradations, a point we were required to emphasize recently in respect of this same legislation when we disapproved of substituting judicial will for legislative intent. *State v. Evers,* 175 *N.J.* 355, 399–400, 815 *A.*2d 432 (2003) (commenting that "[d]eciding the wisdom of the statute is not a judicial prerogative" and "[h]owever harsh the grading ... may appear, that was the intent of the Legislature").

For purposes of completeness, I note that the legislative history of the child pornography statute does not support a different result. Its evolution evinces a legislative resolve to eliminate the proliferation of child pornography in every conceivable market and in respect of each new technological development.

The child pornography statute, prior to 1983, prohibited (1) involving a child in the production of pornography; (2) photographing or filming a child engaged in sexually proscribed conduct (or a simulation thereof); and (3) selling child pornography. In 1983, the Legislature expanded the reach of the statute to include videotaping and "any other reproduction or reconstruction" depicting a child engaging in sexually prohibited conduct or a simulation thereof, rendering "producers" and "reproducers" equally culpable and subject to punishment. *L.* 1983, *c.* 494. The "reproduce or reconstruct" language was added to the subsection that previously

prohibited only photographing or filming children engaged in prohibited sexual acts (that is, the prior version of *N.J.S.A.* 2C:24–4b(4)) at a time when VCRs, videotapes, and other home video equipment were becoming more popular and less expensive. See Senate Judiciary Committee, *Statement to Senate No. 1843* (Dec. 8, 1983) ("The adopted committee amendments also include video tapes and other types of reproductions and reconstructions within the purview of the child pornography statute."). With the widespread growth of personal computers and the Internet in the 1990s, the Legislature twice amended the child pornography law to include those technologies as prohibited means of reproducing child pornography. Senate Judiciary Committee, *Statement to Assembly No. 38* (Nov. 3, 1994); Senate Law and Public Safety Committee, *Statement to Senate No. 1320* (Sept. 17, 1998). In both instances, the Legislature sought to expand the statute's reach. Although there have been numerous amendments over the years to the child pornography statute, the only additional amendment of substantive note for purposes of this appeal occurred in 1992. In response to the decision of the United States Supreme Court in *Osborne v. Ohio,* 495 *U.S.* 103, 110 *S.Ct.* 1691, 109 *L.Ed.*2d 98 (1990), the Legislature amended the statute to add the fourth-degree crime of possessing or viewing child pornography, addressing for the first time the demand side of this industry. *L.* 1992, *c.* 2 (codified as *N.J.S.A.* 2C:24–4b(5)(b)). That the Legislature eventually chose to criminalize passively possessing or viewing child pornography is not inconsistent with the conclusion that printing computer images of child pornography amounts to reproduction under the statute. The Legislature was addressing two separate actions, possession versus creation of more of the very items the Legislature was seeking to eradicate.

The Legislature's efforts to strengthen the statute in order to deal with new technologies that not only facilitated the attainment and dissemination of child pornography, but also made it much easier and more efficient to reproduce child pornography, support a plain language interpretation of *N.J.S.A.* 2C:24–4b(4). See Alison R. Gladowsky, Note, *Has the Computer Placed Our Chil-*

*dren in Danger? A Closer Look at the Child Pornography Prevention Act of 1996*, 8 *Cardozo Women's L.J.* 21, 21–22 (2001) (noting how "less complex and expensive" computer technology has made child pornography more prevalent and accessible). To insist, as the majority does, that the effortless tap of a mouse button should not instantaneously transform a fourth-degree offender into a second-degree offender, is to trap the statute in its pre-Internet, pre-VCR era and to ignore the Legislature's continuous efforts to reinforce the statute to address innovations that have made reproduction an instantaneous process. See William R. Graham, Comment, *Uncovering and Eliminating Child Pornography Rings on the Internet: Issues Regarding and Avenues Facilitating Law Enforcement's Access to 'Wonderland'*, 2000 *L.Rev. Mich. State U. Det. C.L.* 457, 465 (discussing advantages Internet offers child pornography rings that did not exist before); Marty Rimm, *Marketing Pornography on the Information Superhighway: A Survey of 917,410 Images, Descriptions, Short Stories, and Animations Downloaded 8.5 Million Times by Consumers in Over 2000 Cities in Forty Countries, Provinces, and Territories*, 83 *Geo. L.J.* 1849, 1851–52 (1995) (discussing how technological advancements in computer technology have given child pornographers "unprecedented distribution channels" and allowed them to "penetrate" previously "restricted" markets).

I would conclude that printing Internet-based images of child pornography constitutes "reproduction" in violation of *N.J.S.A.* 2C:24–4b(4). Satisfied that the statute provides ample notice that creation of an additional image or copy of child pornography with a computer printer is punishable as a second-degree offense, I would hold that it was error to dismiss count one of the indictment against defendant.

*For affirmance*—Chief Justice PORITZ and Justices LONG, VERNIERO and ZAZZALI—4.

Dissent—Justices COLEMAN, LaVECCHIA and ALBIN—3.