915 A.2d 1116

IN THE MATTER OF THE MUNICIPAL COURT
OF THE BOROUGH OF EAST NEWARK.

Superior Court of New Jersey
Law Division Mercer County

Decided October 27, 2006.

---

514

*Neil Marotta*, for the Borough of East Newark (*Marotta & Garvey*, attorneys, *Mr. Marotta* on the brief).

*Christina M. Glogoff*, Deputy Attorney General, for the State of New Jersey (*Stuart Rabner*, Attorney General of the State of New Jersey).

FEINBERG, A.J.S.C.

A verified complaint for declaratory judgment was initially filed by plaintiff, Borough of East Newark ("East Newark"), on March 31, 2006, in Hudson County. On April 12, 2006, East Newark filed an order to show cause why judgment should not be entered declaring that East Newark and the Town of Harrison ("Harrison") are permitted to enter into an Interlocal Services Agreement for the provision of administrative support services for the municipal court of East Newark, with each municipality maintaining its own municipal court judge and prosecutor. On April 13, 2006, Carmen Messano, P.J.Cv., Hudson County, signed the order requiring the Administrative Office of the Courts ("AOC") to show cause on May 12, 2006, why judgment should not be entered in favor of East Newark.

On May 24, 2006, the AOC filed a motion to change venue from Hudson County to Mercer County, adjourn the return date and modify the briefing schedule set forth in the order to show cause. While initially, on June 9, 2006, the motion was denied, on August 4, 2006, the court granted a motion for reconsideration and signed an order to change venue to Mercer County. On August 23, 2006, this court signed an order setting a new return date and briefing schedule.

The facts are not in dispute. Harrison has its own municipal court and is governed by an elected Mayor and Council. East Newark, the smallest municipality in Hudson County, has its own municipal court and is governed by a Mayor and Council, as provided by *N.J.S.A.* 40A:60–2. East Newark seeks to enter into an Interlocal Services Agreement with Harrison for administration support services for the municipal court of East Newark.

In pertinent part, the agreement provides: (1) East Newark shall compensate Harrison for the administrative costs; (2) each court shall maintain its separate identity; (3) each court shall operate with its own budget, as approved by the respective governing bodies; (4) all court sessions shall be held in the Harrison municipal court; (5) each town shall appoint a judge to

sit in their respective courts; and (6) each matter will be prosecuted by a duly appointed municipal prosecutor for each town.

Earlier this year, East Newark and Harrison advised Maurice J. Gallipoli, A.J.S.C., of their desire to enter into a shared services agreement to share administrative support services pursuant to *N.J.S.A.* 2B:12–1(c). Despite the sharing of services, the agreement provided for a separate judge and prosecutor for each town.

Thereafter, Judge Gallipoli consulted with the Acting Administrative Director ("Director") of the Courts, Philip S. Carchman, J.A.D. Based on the language of *N.J.S.A.* 2B:12–1(c), the Director held the statute requires municipalities sharing municipal court services to also share a municipal court judge. As a result, the request was denied.

■ The Interlocal Services Act, *N.J.S.A.* 40:8A–1 authorizes municipalities to enter into a shared services agreement for municipal court services. Agreements of this nature are further governed by *N.J.S.A.* 2B:12–1(c), which provides as follows:

> Two or more municipalities, by ordinance or resolution, may agree to provide jointly for courtrooms, chambers, equipment, supplies and employees for their municipal courts and agree to appoint the same persons as judges and administrators without establishing a joint municipal court. Where municipal courts share facilities in this manner, the identities of the individual courts shall continue to be expressed in the captions of orders and process.
>
> [*N.J.S.A.* 2B:12–1(c).]

It is well established the plain language of a statute is the best indication of the legislative intent behind its enactment. *State v. Duva*, 192 *N.J.Super.* 418, 420, 470 *A.2d* 53 (Law Div.1983). Where the language of the statute is clear and unambiguous on its face, the plain meaning of the statute is controlling. *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.2d* 857 (2002). Only where a reading of the statute's plain language is subject to two conflicting interpretations should the court look to the legislative history of the statute as a means of determining legislative intent. *State v. Sisler*, 353 *N.J.Super.* 590, 596, 803 *A.2d* 700 (App.Div.2002).

Appropriately, the arguments by the AOC rely on fundamental principles of statutory interpretation, the placement of specific

words, phrases and punctuation. First, and foremost, the AOC argues the plain meaning of the statute requires the sharing of a municipal court judge. The word "and" connecting the phrase "may agree to provide jointly for courtrooms, chambers, equipment, supplies and employees for their municipal courts" with "agree to appoint the same persons as judges and administrators" is conjunctive.

The AOC submits the next sentence beginning with "Where municipal courts share facilities in this manner" supports the conclusion municipal courts may enter into an Interlocal Services Agreement under *N.J.S.A.* 2B:12–1(c), only by providing jointly for facilities, employees and the sharing of municipal court judges.

Furthermore, relying on the specific placement of commas, the AOC argues since the Legislature opted not to place a comma between the phrases "supplies and employees for their municipal courts" and "and agree to appoint the same persons as judges" the lawmakers intended the two phrases to be read in the conjunctive. *See Weinacht v. Bd. of Chosen Freeholders*, 3 *N.J.* 330, 335, 70 A.2d 69 (1949) (finding the absence of a comma to indicate that two statutory phrases should be read in the conjunctive).

Finally, the AOC argues the Legislature's placement of the term "may" within the statute lends further support that *N.J.S.A.* 2B:12–1(c) mandates that municipalities that agree to share municipal court services must also share judges. The term "may" appears only once in the statute, at the beginning before the phrase "agree to provide jointly for courtrooms, chambers, equipment." The AOC argues had the Legislature intended the phrase "agree to appoint the same persons as judges and administrators" to be read as a separate unit, it would have added the term "may" in the last phrase to read: "and may appoint the same persons as judges and administrators...". In instances where the Legislature has carefully employed a term in one place and excluded it in another, the Court should not imply the word where excluded. *GE Solid State, Inc. v. Dir. Div. of Tax.*, 132 *N.J.* 298, 308, 625 A.2d 468 (1993).

East Newark argues the permissive "may agree" in the statute evidences the Legislature's intent to allow municipalities the option of having the same judge and administrator, while maintaining a separate court by title.

The court disagrees. While the term "may" is a permissive term, the term is limited to providing municipalities the option of sharing administrative and facility costs. Once municipalities select that option, the statute requires the courts to agree to appoint the same persons as judges and administrators. That is abundantly clear. Interestingly, the term "may" appears only at the beginning of the statute, nowhere else. The court rejects the notion advanced by East Newark that the "may" appearing in the statute should be applied to each individual phrase that follows it. Had the Legislature intended to make the phrase "agree to appoint the same persons as judges and administrators" permissive, it would have inserted the term "may" before this phrase.

Further, East Newark argues the interpretation by the AOC usurps the constitutional and legislatively granted governmental authority of the Mayor and Council of East Newark and of the Mayor and Council of Harrison because:

> [i]t is applying *N.J.S.A.* 2B:12–1(c) in a manner that would make no substantial distinction between the sharing of services as authorized by that statute and the creation of a Joint Municipal Court as provided by *N.J.S.A.* 2B:12–1(b), by requiring the appointment of the same individual as Municipal Judge for the Municipal Court of the Borough of East Newark and for the Municipal Court of the Town of Harrison.

In essence, East Newark argues the AOC interpretation renders *N.J.S.A.* 2B:12–1(b) and *N.J.S.A.* 2B:12–1(c) superfluous.

In response, the AOC asserts sections (b) and (c) each provide something unique. *N.J.S.A.* 2B:12–1(b) relates to two municipalities that elect to establish a "single joint municipal court and provid[e] for its administration." In this situation, the joint municipal court shares all expenses and the same identity for all court pleadings and correspondence. *N.J.S.A.* 2B:12–1(c), on the other hand, addresses the municipalities that choose to share the same services and judge, but wish to preserve their individual

identities. The second sentence of subsection (c) provides that "[w]here municipal courts agree to share facilities in this manner the identities of the individual courts shall continue to be expressed in the captions of orders and process." *Ibid.*

Further, subsections (b) and (c) differ in that (c) allows municipalities that choose to share municipal court services the benefit of retaining local control over the judicial appointment. *N.J.S.A.* 2B:12–4(b) provides that judges of a joint municipal court shall be nominated and appointed by the Governor.

East Newark argues the legislative intent behind the Interlocal Services Act militates toward a finding that *N.J.S.A.* 2B:12–1(c) permits municipalities to enter into an interlocal service agreement while also maintaining separate judges. *N.J.S.A.* 40:8A–10, entitled "Legislative Intent," provides:

> It is the intent of the Legislature to facilitate and promote interlocal and regional service agreements, and therefore the grant of power under this act is intended to be as broad as is consistent with general law relating to local government.

East Newark submits *N.J.S.A.* 2B:12–1(c) must be read in conjunction with *N.J.S.A.* 40:8A–10, thereby permitting the relief sought.

█ The court rejects this argument. The well-known canon of statutory construction makes clear "where there is any conflict between a general and specific statute covering a subject in a more minute and definite way the latter will prevail over the former." *Ackley v. Norcross,* 122 *N.J.L.* 569, 6 *A.*2d 721 (Sup.Ct. 1939), *aff'd,* 124 *N.J.L.* 133, 11 *A.*2d 106 (E. & A.1940).

While East Newark argues this conflict supports a finding that each municipality has the right to appoint a judge, the plain meaning of *N.J.S.A.* 2B:12–1(c), and the legislative intent set out in *N.J.S.A.* 40:8A–10, suggest otherwise. The court finds *N.J.S.A.* 2B:12–1(c) is far more specific regarding the governance of interlocal service agreements.

*N.J.S.A.* 40:8A–10 is a broad policy statement, whereas *N.J.S.A.* 2B:12–1(c) specifically governs the requirements for municipalities

seeking to share services. Thus, to the extent that a conflict may exist between the statutes, the terms set forth in *N.J.S.A.* 2B:12–1(c) control over the policy statement set forth in *N.J.S.A.* 40:8A–10.

Similarly, East Newark argues *N.J.S.A.* 2B:12–4(b) is in conflict with the AOC's interpretation of *N.J.S.A.* 2B:12–1(c). *N.J.S.A.* 2B:12–4(b) provides:

> In municipalities governed by a mayor-council form of government, the municipal court judge shall be appointed by the mayor with the advice and consent of the council. Each judge of a joint municipal court shall be nominated and appointed by the Governor with the advice and consent of the Senate. In all other municipalities, the municipal judge shall be appointed by the governing body of the municipality.

East Newark argues the phrase "the municipal judge shall be appointed by the governing body" is a mandatory directive from the Legislature to permit each municipality, even those entering into interlocal service agreements, to appoint its own judge.

The court disagrees. As set forth above, where two statutes conflict, the more specific language controls over the more general language. While *N.J.S.A.* 2B:12–4(b) makes clear that, under certain circumstances, municipalities shall appoint their own judges, *N.J.S.A.* 2B:12–1(c) is more specific with regard to municipalities seeking to enter into a shared service agreement. Again, to the extent that a conflict may exist between the statutes, the terms set forth in *N.J.S.A.* 2B:12–1(c) control over the broader statement in *N.J.S.A.* 2B:12–4(b).

The AOC cites *DiProspero v. Penn,* 183 *N.J.* 477, 874 *A.*2d 1039 (2005), for the proposition that a Legislature's change of language in a statute ordinarily implies a purposeful alteration in the substance of the law. In *DiProspero,* the Court considered whether the Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–8(a), specifically, required the plaintiff to show that her injuries had a serious impact on her life. *DiProspero, supra,* 183 *N.J.* at 481, 874 *A.*2d 1039. The Court recognized that AICRA replaced a prior insurance provision that specifically required victims to show that injuries had a serious impact on their

lives. *Id.* at 487–88, 874 *A.*2d 1039. However, the Court found significant the fact that when AICRA was introduced, it contained no such requirement. *Id.* at 494, 874 *A.*2d 1039.

In reaching its finding, the Court observed that

"the Legislature is presumed to be aware of judicial construction of its enactments," *N.J. Democratic Party, Inc. v. Samson,* 175 *N.J.* 178, 195 n. 6, 814 *A.*2d 1028 (2002) (citing *Brewer v. Porch,* 53 *N.J.* 167, 174, 249 *A.*2d 388 (1969)), and that "a change of language in a statute ordinarily implies a purposeful alteration in [the] substance of the law," *Nagy v. Ford Motor Co.,* 6 *N.J.* 341, 348, 78 *A.*2d 709 (1951) (internal quotations omitted). By those canons of statutory construction, we start with the presumption that the Legislature was aware of the *Oswin* decision and that it consciously omitted the serious life impact standard as a condition for recovery of pain and suffering damages.

[*Ibid.*]

Likewise, the statute at issue in the case at bar, *N.J.S.A.* 2B:12–1(c), replaced *N.J.S.A.* 2A:8–18.2, a 1990 statute containing a sunset provision. *N.J.S.A.* 2A:8–18.2 provided:

Two or more municipalities may, by similar ordinance, enter into an agreement to consolidate the use of municipal court accommodations, supplies, and personnel. Notwithstanding any agreement, or the fact that two or more municipalities may chose to appoint the same person as judge, the jurisdiction of the municipal court of each municipality shall be separate and each municipality shall retain its power to appoint the judge of its municipal court as provided by *N.J.S.A.* 2A:8–5.

The statute was set to expire three years after its enactment. *L.* 1990, *c.* 95 § 8, eff. December 23, 1990. The Sponsor's Statement to the legislation stated:

Under the provisions of this bill two or more municipalities may agree to consolidate their municipal court operations in any of the municipalities which are a party to the agreement. The jurisdiction of the courts remains separate and each municipality is free to appoint the judge of its municipal court.

[*L.* 1990, *c.* 95, eff. December 23, 1990.]

Prior to its expiration in 1993, *N.J.S.A.* 2A:8–18.2 was specifically replaced by *N.J.S.A.* 2B:12–1(c). *L.* 1993, *c.* 293, eff. February 15, 1994. Importantly, *N.J.S.A.* 2B:12–1 (c) omitted the provision in the prior statute that each municipality retained the right to appoint its own municipal court judge.

The court is satisfied had the Legislature intended to allow municipalities choosing to share municipal court services to retain the ability to appoint their own individual judges, it would have

clearly done so in *N.J.S.A.* 2B:12–1(c). Instead, the Legislature chose to omit this provision, and the court here must assume this omission was intentional. The order to show cause is denied and judgment is entered in favor of the AOC.