**Herbert W. SALTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0808–CR–672.

Court of Appeals of Indiana.

May 20, 2009.

Rehearing Denied July 28, 2009.

Michael C. Borschel, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Matthew Whitmire, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Herbert W. Salter (Salter), appeals his convictions for forty counts of child exploitation, Class C felonies, Ind.Code § 35–42–4–4, and five counts of dissemination of matter harmful to minors, Class D felonies, Ind.Code § 35–49–3–3.

We reverse.

### ISSUES

Salter presents several issues for our review, two of which we find to be dispositive and restate as:

(1) Whether the trial court erred in concluding that someone who uses a computer to download an electronic image and save it on a CD "creates a digitized image" for purposes of the child exploitation statute, I.C. § 35–42–4–4; and

(2) Whether the dissemination of matter harmful to minors statute, I.C. § 35–49–3–

3, is unconstitutionally vague as applied to Salter's conduct.

## FACTS AND PROCEDURAL HISTORY

In the fall of 2006, the Indianapolis Police Department received information from Delaware authorities that Salter had been having communications of a sexual nature with M.B., a girl in Delaware who was under the age of eighteen.[1] On October 23, 2006, IPD officers obtained and executed a search warrant at Salter's house. In executing the search warrant, officers seized computer towers, CDs, DVDs, VHS tapes, an address book, and miscellaneous documents. Upon searching the contents of two of the CDs, officers discovered thirty-eight images of M.B., fully or partially nude, eight images of other nude "prepubescent" children, and five images of Salter's genitals. (Transcript pp. 32–37). In addition, Delaware State Police found the images of Salter's genitals on M.B.'s computer.

On November 3, 2006, the State filed an Information charging Salter with Counts 1–38, child exploitation, a Class C felony, I.C. § 35–42–4–4(b), based on the digital images of M.B. found in his possession; Counts 39–46, child exploitation, a Class C felony, I.C. § 35–42–4–4(b), based on the digital images of the other children found in his possession; and Counts 47–51, dissemination of matter harmful to minors, a Class D felony, I.C. § 35–49–3–3, based on his sending the digital images of his genitals to M.B. On March 25, 2008, Salter filed three motions to dismiss—one as to Counts 1–38, one as to Counts 39–46, and one as to Counts 47–51—arguing, in part, that the child exploitation and dissemina-

tion of matter harmful to minor statutes are unconstitutionally vague and overbroad as applied to him.[2]

On May 1, 2008, the trial court held a hearing on the motions to dismiss, which also served as a bench trial. At the beginning of the proceeding, the parties filed a Stipulation Regarding Witnesses, in which the parties stipulated to the following relevant facts:

11. [The digital images of M.B.] were originally created by [M.B.];

12. [M.B.] was 16 years of age before she made these digital images;

13. These digital images of [M.B.] were sent via electronic transmission, or email, by [M.B.] to [Salter's] electronic address;

14. [Salter] downloaded the digital images of [M.B.] and saved them electronically by creating a new file that contained the newly copied digitized images of [M.B.] on a digital data storage device on or about September 11, 2006;

15. The digital images of [M.B.] downloaded by [Salter] were identical to the originally created images when he downloaded and saved the new digital image;

* * * *

20. The children in the photographs in Counts 39 through 46 are real children and not computerized creations of a child's image.

21. [Salter] downloaded these additional digital images from various nudist websites and saved them electronically by creating a new file that contained the

---

1. M.B. was fifteen when she started communicating with Salter but turned sixteen on June 11, 2006. The relevance of M.B.'s specific age is explained later in this opinion.

2. Salter also filed a motion to suppress the evidence against him, arguing that the search of his house was based on a faulty warrant. Salter appeals the denial of that motion, but, because we reverse his convictions on other grounds, we need not reach this issue.

newly copied digitized images on a digital data storage device;

22. The parties hereby stipulate that on or about August 17, 2006, [Salter] sent, via electronic transmission, or email, photographs of his penis to [M.B.] at her electronic address;

\* \* \* \*

25. [M.B.] was 16 years of age before she received these digital images of [Salter's] penis[.]

(Ex. pp. 105–07). The parties also stipulated that the trial court "may take judicial notice of the various Indiana statutes that establish that the age of consent for sexual relations in Indiana is sixteen years of age." (Ex. p. 108).

After receiving these stipulations and other exhibits and hearing testimony and argument, the trial court took the motions and the ruling on the bench trial under advisement. On May 16, 2008, the trial court denied all of Salter's motions and found him guilty of Counts 1–6, 8, 10–13, 16–20, 22–23, and 25–51.[3] On July 3, 2008, the trial court imposed a sentence of three years, with 185 days executed and 910 days suspended (including 180 days of probation).

Salter now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Counts 1–46

█ Salter puts forth several arguments as to why the trial court should have granted his motions to dismiss Counts 1–46. One is that the State's attempt to include downloading an electronic image and saving it on a CD in the definition of "creates a digitized image" exceeds the

permissible scope of the child exploitation statute, Indiana Code section 35–42–4–4(b). Because we agree with Salter on this point, we need not address the remainder of his arguments regarding Counts 1–46.

### A. Standard of Review

It has been said that an appellate court will review the denial of a motion to dismiss criminal charges for an abuse of discretion. *See, e.g., Ingram v. State,* 760 N.E.2d 615, 618 (Ind.Ct.App.2001), *trans. denied.* Here, however, the trial court's decision was a based on its interpretation of the child exploitation statute, a question of law that we review *de novo. Houston v. State,* 898 N.E.2d 358, 361 (Ind.Ct.App. 2008), *trans. denied.* The primary goal in interpreting the meaning of a statute is to determine and effectuate the intent of the legislature. *Senn v. State,* 766 N.E.2d 1190, 1199 (Ind.Ct.App.2002), *reh'g denied.* To determine legislative intent, courts must consider the objectives and the purposes of the statute in question and the consequences of the statute's interpretation. *Id.*

### B. Scope of Indiana Code section 35–42–4–4

Indiana Code section 35–42–4–4, enacted in 1978, originally provided as follows:

A person who knowingly or intentionally photographs, films, or videotapes a child under sixteen (16) years of age while the child is performing or submitting to:

(1) sexual intercourse;

(2) deviate sexual conduct; or

(3) fondling or touching intended to arouse or satisfy the sexual desires of either the child or another person;

commits child exploitation, a Class D felony.

---

3. The trial court found Salter not guilty on Counts 7, 9, 14–15, 21, and 24 because the images underlying those counts did not include "sexual conduct."

P.L. 148–1978, § 5. Today, Indiana Code section 35–42–4–4 defines two separate crimes: child exploitation, a Class C felony, and possession of child pornography, a Class D felony. Specifically, subsection (b) provides:

A person who knowingly or intentionally:

(1) manages, produces, sponsors, presents, exhibits, photographs, films, videotapes, or creates a digitized image of any performance or incident that includes sexual conduct by a child under eighteen (18) years of age;

(2) disseminates, exhibits to another person, offers to disseminate or exhibit to another person, or sends or brings into Indiana for dissemination or exhibition matter that depicts or describes sexual conduct by a child under eighteen (18) years of age; or

(3) makes available to another person a computer, knowing that the computer's fixed drive or peripheral device contains matter that depicts or describes sexual conduct by a child less than eighteen (18) years of age;

commits child exploitation, a Class C felony.

Meanwhile, subsection (c) provides:

A person who knowingly or intentionally possesses:

(1) a picture;

(2) a drawing;

(3) a photograph;

(4) a negative image;

(5) undeveloped film;

(6) a motion picture;

(7) a videotape;

(8) a digitized image; or

(9) any pictorial representation;

that depicts or describes sexual conduct by a child who the person knows is less than sixteen (16) years of age or who appears to be less than sixteen (16) years of age, and that lacks serious literary, artistic, political, or scientific value commits possession of child pornography, a Class D felony.

Our legislature has, for good reason, decided to punish the production and distribution of child pornography more broadly—extending to matter portraying sixteen and seventeen year olds—and more severely—Class C felony—than mere possession of child pornography, which concerns only children under sixteen and is a Class D felony.

Here, the State charged Salter with forty-six counts of child exploitation based on two different groups of pictures. M.B. e-mailed thirty-eight pictures of herself to Salter, which Salter downloaded to his computer and saved to a CD. Salter also downloaded eight pictures of naked children from various nudist websites and saved them on a CD. The State contends that a person who uses a computer to download an electronic image and save it on a CD "creates a digitized image" as that phrase is used in Indiana Code subsection 35–42–4–4(b). We disagree.

To understand our own statute, it is helpful to understand how other states have analyzed similar statutes. We are aware of only two other states that have addressed issues substantially similar to the one before us, and the highest courts of both states reached the same conclusion we do. In *State v. Sisler*, 177 N.J. 199, 827 A.2d 274 (2003), a man who used a library computer to access the Internet and printed images of child pornography using the library's printer was charged under the following statute:

Any person who photographs or films a child in a prohibited sexual act or in the simulation of such an act or who uses any device, including a computer, to reproduce or reconstruct the image of a

child in a prohibited sexual act or in the simulation of such an act is guilty of a crime in the second degree.

N.J. Stat. Ann. § 2C:24–4(b). The State alleged that, by printing the images, he had used a computer to "reproduce" the images. *Sisler*, 827 A.2d at 276. He was also charged under another statute making the mere possession of child pornography a lesser offense:

> Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, including on the Internet, is guilty of a crime in the fourth degree.

N.J. Stat. Ann. § 2C:24–4(b)(5)(b). The defendant moved to dismiss the reproduction count, arguing that the legislature could not have intended to impose the harsher penalty based on the simple act of printing a computer image for one's personal use.

The New Jersey Supreme Court agreed with the defendant. New Jersey's original statute, much like Indiana's original statute, punished only the "photograph[ing]" or "film[ing]" of a child in a prohibited sexual act. *Sisler*, 827 A.2d at 276. In 1983, the New Jersey legislature expanded the statute to include those who "reproduce or reconstruct the image of a child in a prohibited sexual act[.]" *Id.* at 277. In light of this history and the current text of the statute, the court held:

> Since the Legislature first enacted it in 1977, the provision at issue here has had as its focus the *creation* of child pornography. As noted, it originally contemplated that a culpable party would produce such material in one of two ways, *i.e.*, by photograph or film. The statute today contemplates that the

party might *generate* the prohibited image via other methods or devices such as video imaging, or via a computer device that would aid the person in "reproducing" or "reconstructing" the image for use on the Internet.

> From that perspective, we agree with defendant. The disputed language, fairly read, merely describes the computer-generation or other technological process that *creates* the prohibited image that the original creator or that another person, in turn, disseminates, possesses, or simply views. Stated differently, we consider the word "reproduce" alongside the second-degree offenses to which it is held equivalent, including "photographing or filming a child in a prohibited sexual act." The Legislature coupled the offenses of photographing and reproducing, indicating that they are of comparable gravity and worthy of identical punishment. The term "reproduce" thereby takes on a comparable meaning.

> \* \* \* \*

> A *creator* of child pornography (*e.g.*, a person who *initially* photographs or films the child) is more culpable than a possessor because the creator *sets in motion* the highly objectionable industry that this statute seeks to combat.

*Id.* at 278–79 (emphases added). Rejecting the State's reliance on the broader dictionary definition of "reproduce," the court noted, "We are not persuaded by the State's resort to a dictionary definition of the term that gives it a meaning uninformed by context." *Id.* at 279. Concluding that "[t]he prohibited image already was created when defendant allegedly printed it for his sole use," the court held that the defendant was "no more than a suspected fourth-degree possessor." *Id.* at 279–80.

Two years later, relying in part on *Sisler*, the Maryland Court of Appeals (Maryland's highest court), issued its opinion in *Moore v. State*, 388 Md. 446, 879 A.2d 1111 (2005). In *Moore*, a man who had downloaded child pornography onto his computer was charged with "using a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse or sexual conduct[.]" *Id.* at 1114 (quoting Md. Code Ann., Crim. Law § 11–207(a)(3)). He, like the defendant in *Sisler*, was also charged under a separate statute making the mere possession of child pornography a lesser offense. *See* Md.Code Ann., Crim. Law § 11–208(a). He was convicted of both counts and appealed.

On appeal, Moore argued that the phrase "use a computer to depict or describe" means "use a computer to create" and that he did not "create" the images by downloading them onto his computer. *Moore*, 879 A.2d at 1116. The Maryland Court of Appeals agreed, holding:

> Moore's interpretation of the statutory phrase "use a computer to depict or describe" as "use a computer to create" is consistent with the ordinary usage of "depict" and "describe." "Depict" is defined as either "to form a likeness of by drawing or painting" or "to represent, portray, or delineate in other ways than in drawing or painting." "Describe" means "to represent by words written or spoken for the knowledge or understanding of others."
>
> The definitions indicate that the terms denote creative acts. Artists and artisans form a likeness by drawing or painting—they depict. Poets, narrators, and orators represent, portray, or delineate—they depict—and represent by words—they describe. A person who photographs or films pornographic images of a child, who captures such images directly into a computer by means

of a digital camera or who first translates a motion picture or photograph of such images into a computer file is engaged in a creative act even though the perverse, heinous, and cruel nature of this creative act differentiates it from the creative acts that society values and tolerates.

> To the contrary, the State's interpretation of "use a computer to depict or describe" as "use a computer to download" does not accord with the ordinary usages of depict and describe. The definition of "download" is different than the definitions of "depict" and "describe." "Download" means to transfer or copy a file. The definition of "download" makes clear that to download is a different act than to depict and describe. *The person who captures an image directly into a computer by means of a digital camera or who first converts the motion picture or photograph into a computer file has depicted that image. The person who downloads that image merely has copied and saved the file—i.e. has taken possession of the file.*

> \* \* \* \*

> *The person who downloads a picture transfers and copies a depiction or a file that depicts—the image already has been depicted when the person downloads it. The act of downloading is covered by [the possession statute].*

*Id.* at 1116–17 (citations omitted) (emphases added). After reviewing the legislative history of the statute, the court continued:

> [A] person who downloads a poem has not described a rose—the poet described the rose when writing the poem. The act of downloading a picture is more confusing because it involves an image within an image—the picture itself and the projection of the image onto a computer screen. The photographer depicts

a subject by creating an image—the photograph. The recipient does not depict the subject of the picture, but rather copies or transfers the photograph onto the computer screen or drive. *A person who downloads a picture of a rose does not depict the rose—the photographer depicts the rose when taking the picture.*

*Id.* at 1122 (emphasis added). The court reversed Moore's conviction for depicting or describing and remanded for resentencing on the possession count only. *Id.* at 1123.

We take the following from *Sisler* and *Moore:* a person who prints an image from a computer or who downloads an image onto a computer does not "create" the image. The image was already created. All the person is doing is saving a copy of the image.

Returning now to the Indiana statute, the 1978 provision, like the original versions of the New Jersey and Maryland statutes, was clearly aimed at people who were creating original images, *i.e.,* the people holding the cameras while children engaged in sexual activity. In 1983, our legislature amended the statute to punish any person who "manages, produces, sponsors, presents, exhibits, photographs, films, or videotapes any performance or incident that includes sexual conduct by a child under sixteen (16) years of age" or who "disseminates, exhibits to another person, offers to disseminate or exhibit to another person, or sends or brings into Indiana for dissemination or exhibition matter that depicts or describes sexual conduct by a child under sixteen (16) years of age[.]" P.L. 325–1983, § 1. This amendment extended punishment to any person who put or offered to put child pornography on display, live or otherwise, for an audience, as well as to distributors and dealers of child pornography.

It was not until 1990 that the legislature added a provision punishing the mere possession of child pornography. Public Law 37–1990, § 25, added the following relevant language to the statute:

A person who knowingly or intentionally possesses:

   (1) a picture;

   (2) a drawing;

   (3) a photograph;

   (4) a negative image;

   (5) undeveloped film;

   (6) a motion picture;

   (7) a videotape; or

   (8) any pictorial representation;

that depicts or describes sexual conduct by a child who is, or appears to be, less than sixteen (16) years of age and that lacks serious literary, artistic, political or scientific value commits possession of child pornography, a Class A misdemeanor.

In 1995, the legislature changed the relevant age for child exploitation from "under sixteen" to "under eighteen," but left the relevant age for possession of child pornography at "less than sixteen[.]" P.L. 59–1995, § 3.

In 2002, the legislature made several additional changes to Indiana Code section 35–42–4–4, including increasing child exploitation from a Class D felony to a Class C felony and increasing possession of child pornography from a Class A misdemeanor to a Class D felony. P.L. 3–2002, § 2. More importantly for purposes of this opinion, the legislature added the language "creates a digitized image of" to subsection (b)(1). *Id.* The State would have us hold that this language expands criminal liability to include a person who saves an electronic copy of a picture, even if only for personal gratification.[4] We do not believe

---

4. The parties note that Counts 1–46 of the Information each allege that Salter *"produced*

that the language should be read so broadly.

In 1978, when Indiana Code section 35–42–4–4 first appeared, a person interested in having a picture or a movie of a child engaged in sexual activity was limited to a paper photograph, a film reel, or a videotape. Today, however, many have pictures saved on their computers, on CDs, and on other electronic storage devices. With the advent of Facebook, MySpace, and websites dedicated to picture storage, such as Shutterfly and Snapfish, computer storage of pictures grows more common every day. To punish someone who saves electronic images on a CD but not someone who stores paper pictures in a filing cabinet would be to ignore the realities of modern American society.

To be sure, a person who opens an e-mail and saves an attached picture to his or her computer or to a CD "creates" something. He or she "creates" a new unit of data on the computer or a file on a CD that was not there before. But is that what our legislature meant by "creates a digitized image of"?

To answer that question, we need look no further than the original statute, which was written to punish the photographing, the filming, and the videotaping of sexual activity involving a child. As noted above, this was a statute aimed at eliminating the initial creation of these images, *i.e.*, the original act of recording. Until the late 1990s, the only way to do so was to use a camera along with film or tape. But, as noted by the Texas Court of Appeals in

1999, "It is common knowledge, however, that modern digital cameras do not use any kind of film, but record real-life images directly in digital form." *Porter v. State,* 65 S.W.3d 72 (Tex.App.—Austin 1999), *reh'g overruled.* Because people who digitally record a performance or incident are not technically photographing, filming, or videotaping, our legislature acted to close a possible loophole for users of modern digital devices. As technology evolved, so did the statute. *See Moore,* 879 A.2d at 1122 ("Thus, the [ ] addition of the computer-related language with filming and photography reasonably can be understood as a recognition by the Legislature that the computer was a new technology which could be used to create child pornography.").

We find additional support for this conclusion by application of the canon of statutory construction *ejusdem generis:* when a list or enumeration of words of specific and limited meaning are followed by words of more general and comprehensive meaning, the general words are to be construed as including only those things that are like those designated by the specific words. *600 Land, Inc. v. Metropolitan Bd. of Zoning Appeals of Marion County,* 889 N.E.2d 305, 310 (Ind.2008). Applying this principle, we gather that our legislature's intent in adding the words "creates a digitized image of" was to make sure that those who use digital cameras to take photographs are treated the same as those who use film cameras, and to make sure that those who use digital cameras to rec-

---

*or* created a digitized [ ] image," and they dispute the meaning of the word "produces" in the statute. (Appellant's App. pp. 35–43) (emphasis added). But the evolution of the statute makes clear that the word "produces" is completely unrelated to the words "digitized image." The word "produces" was added to the statute in 1983, while the phrase "creates a digitized image of" was

added in 2002. Each modifies the words "any performance or incident," that is, the statute punishes a person who "produces ... any performance or incident" or "creates a digitized image of any performance or incident...." In short, the statute does not contemplate a person who "produces ... a digitized image."

ord videos are treated the same as those who use videotape cameras.[5]

Regardless of the language used—"create," "reproduce," or "depict or describe"—the aim of statutes like ours, New Jersey's, and Maryland's is the same: to stop the creation of child pornography. Here, Salter did not "create" any of the images underlying Counts 1–46; M.B. created the thirty-eight pictures of herself, and some unknown person created the eight images of the other children before they were posted on the nudist websites visited by Salter. By downloading the images of M.B. and the other children and burning them onto CDs, Salter only saved copies of them, i.e., he possessed them. We therefore reverse Salter's convictions for child exploitation.

So what of Salter's possession of the images? As for the images of M.B., he has committed no crime. The State concedes that M.B. was sixteen when she took the pictures of herself, and Indiana's possession of child pornography statute only extends to children under sixteen. *See* I.C. § 35–42–4–4(b). The children in the other eight images all appear to be under sixteen, but the State might implicate Indiana's Successive Prosecution Statute if it chooses to charge Salter with possession of child pornography based on those images. *See* I.C. § 35–41–4–4; *see also Williams v. State*, 762 N.E.2d 1216 (Ind.

2002) ("Where the State chooses to bring multiple prosecutions for a series of acts constituting parts of a single criminal transaction, it does so at its own peril."). We leave it to the State to evaluate that possibility in the first instance.

## II.  *Counts 47–51*

■ Salter also argues that the trial court should have dismissed Counts 47–51, in which Salter was charged with dissemination of matter harmful to minors based on the pictures of his genitals that he sent to M.B. Salter contends, in part, that Indiana Code section 35–49–3–3 is unconstitutionally vague as applied to him.[6]

### A.  *Standard of Review*

■ Due process principles advise that a penal statute is void for vagueness if it does not clearly define its prohibitions. *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007). A penal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden so that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. *Id.* A challenge to the validity of a statute must overcome a presumption that the statute is constitutional. *Id.* The party challenging the statute has the burden of proving otherwise. *Id.*

---

5. A person who uses a computer or other digital device to generate the appearance of sexual conduct by children, that is, to manipulate existing images, could also be said to have "created" a digitized image. The New Jersey statute at issue in *Sisler* and the Maryland statute at issue in *Moore* both include such conduct. *See* N.J. Stat. Ann. § 2C:24–4(b) ("Any person who ... uses any device, including a computer, to reproduce or reconstruct the image of a child in a prohibited sexual act or in the simulation of such an act is guilty of a crime in the second degree."); Md.Code Ann., Crim. Law § 11–207(a)(3) ("A

person may not ... use a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct[.]"). The State does not claim that Salter in any way altered or manipulated the pictures he had saved on the CDs.

6. Salter also claims that the statute is unconstitutionally overbroad as applied to him. Because we reverse Salter's convictions on vagueness grounds, we need not address his overbreadth argument.

## B. Constitutionality of Indiana Code section 35–49–3–3 As Applied to Salter

Indiana Code section 35–49–3–3 provides, in pertinent part:

(a) Except as provided in subsection (b), a person who knowingly or intentionally:

(1) disseminates matter to minors that is harmful to minors;

(2) displays matter that is harmful to minors in an area to which minors have visual, auditory, or physical access, unless each minor is accompanied by the minor's parent or guardian;

. . .

commits a Class D felony.

"Matter" includes "any picture, drawing, photograph, motion picture, digitized image, or other pictorial representation," and "minor" is defined as "any individual under the age of eighteen (18) years." I.C. §§ 35–49–1–3, –4. Salter does not deny that he disseminated or displayed "matter" to M.B. or that M.B. was a "minor" for purposes of the statute.[7] Rather, he contends that "[n]o person of ordinary intelligence would think that he could legally

have sexual relations with another person, but could not send that same person an electronic image of his genitals." (Appellant's Br. p. 35). We understand Salter's argument to be that he had no way of knowing that pictures of his genitals would be considered "harmful" to M.B., given that, under Indiana law, he could have been naked in front of M.B. and had sex with her without violating any law. Again, we must agree.[8]

The question is whether Indiana Code section 35–49–3–3 would give a person of ordinary intelligence fair notice that sending a picture of his or her genitals to a sixteen-year-old is forbidden. See Brown, 868 N.E.2d at 467. The statute targets matter that is "harmful" to minors, and matter is "harmful to minors" if:

(1) it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;

(2) considered as a whole, it appeals to the prurient interest in sex of minors;

(3) it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and

---

7. Salter's brief does refer to M.B. as an "adult" on several occasions. For purposes of Indiana Code section 35–49–3–3, M.B. was clearly a minor, not an adult. The characterization of M.B. as an adult first appeared in trial counsel's memoranda in support of his motions to dismiss, which appellate counsel simply copied and pasted into his own brief. Perhaps appellate counsel would have noticed this poor choice of words had he written the appellate brief himself. We encourage counsel to adopt that practice in the future.

8. The State's response to Salter's argument misses the mark. The State relies on the language of subsection (b) of Indiana Code section 35–49–3–3, which provides, in pertinent part:

(b) This section does not apply if a person disseminates, displays, or makes available the matter described in subsection (a)

through the Internet, computer electronic transfer, or a computer network unless

. . .

(3) the person distributes the matter to a child less than eighteen (18) years of age believing or intending that the recipient is a child less than eighteen years of age.

The State seizes on the language about computers and children under the age of eighteen and argues that the statute "explicitly indicates" that Salter's conduct was illegal. (Appellee's Br. p. 15). But the issue is not whether Salter used a computer or whether M.B. was under eighteen; Salter concedes these points. Rather, the issue is whether Salter was on notice that the images he sent to M.B. would be considered "harmful" and therefore illegal. The State assumes, without elaboration, that the images were harmful.

(4) considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

I.C. § 35–49–2–2. As applied to Salter's case, even assuming, *arguendo*, that elements (1), (2), and (4) are satisfied, the issue still remains whether Salter had fair notice that pictures of his genitals are "patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors[.]" We conclude that he did not.

Salter sent the pictures of his genitals to M.B., who, at sixteen, was old enough to consent to sexual relations in Indiana. *See* I.C. § 35–42–4–9; *see also Williams v. State*, 178 Ind.App. 554, 383 N.E.2d 416, 418 (1978) ("Only when a female reaches the age of consent, *i.e. sixteen years old* ...." (emphasis added)).[9] Such sexual activity could involve varying degrees of nudity and necessarily involves some exposure of the genitals. By setting the legal age of consent at sixteen, the Indiana legislature has made an implied policy choice that in-person viewing of another person's genitals is "suitable matter" for a sixteen- or seventeen-year-old child. That being so, how could Salter have known that a picture of his genitals would be "harmful," that is, not "suitable," for M.B.? Asked another way, if such images are harmful to sixteen- and seventeen-year-old children, then why would our legislature allow those children to view the same matter in-person, in the course of sexual activity?[10] These questions reveal the flaw in Indiana Code section 35–49–3–3 as applied to Salter: when read in light of well-established Indiana law setting the age of consent to sexual relations, it did not provide him with fair notice that the State would consider pictures of his genitals harmful to or unsuitable for a sixteen-year-old girl.

■ It is true that an otherwise vague statute can avoid an as-applied challenge if a prior judicial decision has fairly disclosed the conduct in question to be within its scope. *See United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). That is, clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute. *Id.* However, our review of all Indiana appellate decisions citing Indiana Code section 35–49–3–3 and its predecessor, Indiana Code section 35–30–11.1–1, failed to reveal any in which the alleged victim was sixteen or seventeen years old. In other words, the vagueness of Indiana Code section 35–49–3–3, as applied to Salter, has not been eliminated by judicial gloss. We therefore reverse Salter's convictions for dissemination of matter harmful to minors.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred by denying Salter's motions to dismiss the charges against him. Therefore, we reverse Salter's convictions. Because of the nature of Salter's actions and the sheer number of his convictions, we realize that our decision is sure to inspire opposition. But our decision is based in large part on the fact that our legislature has decided to protect sixteen- and seventeen-year-olds, including M.B., in different ways than it protects other minors. Opposition to that policy choice should be voiced to the legislature, not to the courts.

Reversed.

---

**9.** Sixteen is also the age of consent in Delaware. *See* Del.Code Ann. tit. 11, § 761(j). The parties do not indicate whether Salter is being prosecuted for any crime in Delaware.

**10.** Tellingly, the dissent is unable to answer these questions.

DARDEN, J., concurs.

VAIDIK, J., concurs in part and dissents in part with separate opinion.

VAIDIK, Judge, concurring in part, dissenting in part.

I respectfully dissent from the majority's conclusion that Indiana Code § 35–49–3–3 is void for vagueness and with its decision to reverse Salter's convictions for dissemination of matter harmful to minors (Counts 47–51). I otherwise concur with the majority.

A challenge to the validity of a statute must overcome a presumption that the statute is constitutional. *Brown v. State*, 868 N.E.2d 464, 467 (Ind.2007). The party challenging the statute has the burden of proving otherwise. *Id.*

Due process principles advise that a penal statute is void for vagueness if the statute does not clearly define its prohibitions. *Id.* A criminal statute may be invalidated for vagueness for failing to provide notice enabling ordinary people to understand the conduct that it prohibits. *Id.* A related consideration is the requirement that a penal statute give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden so that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Id.* (quotation omitted).

But a statute "is not void for vagueness if individuals of ordinary intelligence could comprehend it to the extent that it would fairly inform them of the generally proscribed conduct." *Id.* (quotation omitted). In addition, the statute need not specifically list all items of prohibited conduct; rather, it must inform individuals of the conduct generally proscribed. *Id.* The examination of a vagueness challenge is performed in light of the facts and circumstances of each individual case. *Id.*

Indiana Code § 35–49–3–3 provides, in pertinent part:

(a) Except as provided in subsection (b), a person who knowingly or intentionally:

(1) disseminates matter to minors that is harmful to minors;

(2) displays matter that is harmful to minors in an area to which minors have visual, auditory, or physical access, unless each minor is accompanied by the minor's parent or guardian;

\*     \*     \*     \*     \*     \*

commits a Class D felony.

(b) This section does not apply if a person disseminates, displays, or makes available the matter described in subsection (a) through the Internet, computer electronic transfer, or a computer network unless:

(1) the matter is obscene under IC 35–49–2–1;

(2) the matter is child pornography under IC 35–42–4–4; or

(3) the person distributes the matter to a child less than eighteen (18) years of age believing or intending that the recipient is a child less than eighteen (18) years of age.

It is undisputed that Salter disseminated or displayed "matter" to M.B. and that M.B. was a "minor," that is, an individual under the age of eighteen, for purposes of this statute. *See* Ind.Code §§ 35–49–1–3, –4. Nevertheless, the majority concludes that the statute is unconstitutionally vague because Salter was not on notice that the pictures he sent to M.B. of his genitals would be considered "harmful to minors" since a sixteen year old in this State can consent to sex, which necessarily involves some exposure of genitals.

In essence, the majority concludes that the phrase "harmful to minors" is void for vagueness as applied to sixteen and seventeen year olds because they can consent to sex. Therefore, the majority's reasoning continues, how can a picture of genitals be harmful to a sixteen or seventeen year old when they can engage in consensual sex? I, however, do not believe that the phrase "harmful to minors" is void for vagueness when applied to such minors because our legislature has explicitly defined the phrase. Specifically, Indiana Code § 35–49–2–2 provides:

A matter or performance is harmful to minors for purposes of this article if:

(1) it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;

(2) considered as a whole, it appeals to the prurient interest in sex of minors;

(3) it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and

(4) considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

First, I think that the "harmful to minors" definition informs individuals of ordinary intelligence of the conduct generally proscribed. See Zitlaw v. State, 880 N.E.2d 724, 732 (Ind.Ct.App.2008) (addressing a vagueness challenge to Indiana Code § 35–49–2–2 and concluding that individuals of ordinary intelligence would comprehend the statute adequately enough to inform them of the proscribed conduct), trans. denied. Second, the implication that our legislature explicitly authorizes or even encourages sex at age sixteen is mis-

leading. Rather, our legislature has simply chosen *not* to criminalize adults having sex with sixteen and seventeen year olds in the sexual misconduct with a minor statute. See Ind.Code § 35–42–4–9; see also Goodwin v. State, 573 N.E.2d 895, 899 (Ind.Ct.App.1991) (noting "the clear legislative intent to criminalize sexual conduct involving children under age sixteen"), trans. denied. It is the sexual misconduct with a minor statute from which we have gleaned the age of consent at sixteen. Just because our legislature has decided *not* to criminalize adults having sex with sixteen and seventeen year olds does not mean that the legislature cannot enact a separate statute that protects *all* minors from harmful matter, including pictures of genitals. This policy decision does not make the statute vague. Further, the fact that our legislature has decided not to criminalize sex between adults and sixteen and seventeen year olds does *not* mean that an adult's dissemination or display of pictures of genitals to a minor is not patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors. I.C. § 35–49–2–2(3).[11]

In addition, Salter was not having sex with M.B. The fact that Salter may, hypothetically, have sex with a consenting sixteen year old does not change the fact that our legislature has decided to criminalize disseminating or displaying matter that is harmful to *all* minors, regardless of whether they have consented to receiving such matter. See Baumgartner v. State, 891 N.E.2d 1131 (Ind.Ct.App.2008) ("[A] statute is void for vagueness only if it is vague as applied to the precise circumstances of the present case.... The defendant is not

---

**11.** There is no real dispute in this case that the other three subsections have been satisfied.

at liberty to devise hypothetical situations which might demonstrate vagueness.") (citations omitted).

In sum, I believe that Indiana Code § 35–49–3–3 is clear: a person who knowingly or intentionally disseminates or displays matter to minors that is harmful to minors is guilty of a Class D felony. M.B. is a minor, and Indiana Code § 35–49–2–2 sufficiently defines "harmful to minors." Accordingly, I do not believe that "harmful to minors" is void for vagueness. I would therefore affirm Salter's convictions for dissemination of matter harmful to minors.[12]

---

12. Salter also argues that Indiana Code § 35–49–3–3 is unconstitutionally overbroad. I believe that Salter's overbreadth argument fails as well.